MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
CARLOS IDENIS MARTE ROSARIO,
EDGAR GONZALEZ LICONA, EDGAR
GONZALEZ OLIVA, and MANUEL
SANCHEZ VIELMA, *individually and on
behalf of others similarly situated,*

                   *Plaintiffs*,

        -against-

EURO RENOVATION, INC.  (D/B/A EURO
RENOVATION),            STRUCTURAL
PRESERVATION SYSTEMS, LLC (D/B/A
STRUCTURAL), STRUCTURAL GROUP,
INC.   (D/B/A   STRUCTURAL),   JOHN
CRIGLER, GARRY NAUGHTON, PETER H.
EMMONS, and MAREK WNOROWSKI,

                  *Defendants.*
-----------------------------------------------------X

                 **COMPLAINT**

    **COLLECTIVE ACTION UNDER**
      **29 U.S.C. § 216(b)**

         **ECF Case**

Plaintiffs Carlos Idenis Marte Rosario, Edgar Gonzalez Licona, Edgar Gonzalez Oliva, and

Manuel Sanchez Vielma, individually and on behalf of others similarly situated (collectively,

"Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their

knowledge and belief, and as against Euro Renovation, Inc. (d/b/a Euro Renovation), Structural

Preservation Systems, LLC (d/b/a Structural), Structural Group, Inc. (d/b/a Structural),

("Defendant Corporations"), John Crigler, Garry Naughton, Peter H. Emmons, and  Marek

Wnorowski, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Euro Renovation, Inc. (d/b/a Euro Renovation), Structural Preservation Systems, LLC (d/b/a Structural), Structural Group, Inc. (d/b/a Structural), John Crigler, Garry Naughton, Peter H. Emmons, and Marek Wnorowski.

2.       Defendants own, operate, or control three construction companies, located at 39 Utter Ave, Hawthorne, New Jersey 07506 under the name "Structural".

3.      Upon information and belief, individual Defendants John Crigler, Garry Naughton, Peter H. Emmons, and Marek Wnorowski, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the construction corporations as joint or unified enterprises.

4.      Plaintiffs were employees of Defendants.

5.      Plaintiffs were employed as iron, construction, concrete and scaffolding workers, at the construction corporation located at 62 South Street, Goshen, New York 10924.

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate overtime compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the overtime compensation required by federal and state law and regulations.

10.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), and "overtime wage order" respectively codified at N.Y.C.R.R. Tit. 12 §§ 142-2.2, 2.4), including applicable liquidated damages, interest, attorneys' fees and costs.

11.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

13.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate the construction company located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

14.     Plaintiff Carlos Idenis Marte Rosario ("Plaintiff Marte" or "Ms. Marte") is an adult individual residing in Bronx County, New York. Plaintiff Marte was employed by Defendants at Euro Renovation and Structural's construction Project at 256 Third Avenue (hereinafter "the Taino towers location") from approximately July 2015 until on or about December 2015.

15.     Plaintiff Edgar Gonzalez Licona ("Plaintiff Gonzalez" or "Mr. Gonzalez") is an adult individual residing in Queens County, New York. Plaintiff Gonzalez was employed by Defendants at Euro Renovation and Structural's construction project at 256 Third Avenue (hereinafter "the Taino towers location") from approximately July 2015 until on or about October 2017, and at defendants' construction Project at 969 Park avenue (hereinafter "the Park avenue location") from approximately October 2017 until on or about December 12, 2017.

16.     Plaintiff Edgar Gonzalez Oliva ("Plaintiff Oliva" or "Mr. Oliva") is an adult individual residing in Bronx County, New York. Plaintiff Oliva was employed by Defendants at Euro Renovation and Structural's construction project at 256 Third Avenue (hereinafter "the Taino towers location")  from approximately May 2015 until on or about august 2017, and at Defendants' construction Project at 969 Park avenue (hereinafter "the Park Avenue location") from approximately August 2017 until on or about December 12, 2017.

17.     Plaintiff Manuel Sanchez Vielma ("Plaintiff Sanchez" or "Mr. Sanchez") is an adult individual residing in Bronx County, New York. Plaintiff Sanchez was employed by Defendants at Euro Renovation and Structural's construction project at 256 Third Avenue (hereinafter "the Taino towers location") from approximately July 2015 until on or about November 2015.

*Defendants*

18.     At all relevant times, Defendants owned, operated, or controlled three construction companies, located at 62 South Street, Goshen, New York 10924 under the name "Euro Renovation" and at 39 Utter Ave, Hawthorne, New Jersey 07506 under the name "Structural".

19.     Upon information and belief, Euro Renovation, Inc. (d/b/a Euro Renovation) is a domestic corporation organized and existing under the laws of the State of New York. Upon

information and belief, it maintains its principal place of business at 62 South Street, Goshen, New York 10924.

20.     Upon information and belief, Structural Preservation Systems, LLC (d/b/a Structural) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 39 Utter Avenue, Hawthorne, New Jersey 07506.

21.     Upon information and belief, Structural Group, Inc. (d/b/a Structural) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 39 Utter Avenue, Hawthorne, New Jersey 07506.

22.     Defendant John Crigler is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant John Crigler is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant John Crigler possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

23.     Defendant Garry Naughton is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Garry Naughton is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Garry Naughton possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs,

establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

24.     Defendant Peter H. Emmons is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Peter H. Emmons is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Peter H. Emmons possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

25.     Defendant Marek Wnorowski is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Marek Wnorowski is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Marek Wnorowski possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

26.     Defendants operate three construction companies located in the Orange County in New York and Passaic County in New Jersey.

27. Individual Defendants John Crigler, Garry Naughton, Peter H. Emmons, and Marek Wnorowski, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

28. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

29. Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

30. Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

31. In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

32. Upon information and belief, Individual Defendants, John Crigler, Garry Naughton, Peter H. Emmons, and Marek Wnorowski operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

a) failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b) defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

    e)  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

    f)  intermingling assets and debts of their own with Defendant Corporations,

    g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

33.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

34.    In each year from 2015 to 2017, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

35.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the construction corporations in a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

36.    Plaintiffs are former employees of Defendants who were employed as an iron, concrete and scaffolding worker; construction workers; and a mechanic in scaffolding.

37.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Carlos Idenis Marte Rosario*

38.     Plaintiff Marte was employed by Defendants from approximately July 2015 until on or about December 2015.

39.     Defendants employed Plaintiff Marte as an iron, concrete and scaffolding worker.

40.     Plaintiff Marte regularly handled goods in interstate commerce, such as construction and building materials and other supplies produced outside the State of New York.

41.     Plaintiff Marte's work duties required neither discretion nor independent judgment.

42.     Throughout his employment with Defendants, Plaintiff Marte regularly worked in excess of 40 hours per week.

43.     From approximately July 2015 until on or about December 2015, Plaintiff Marte worked as an iron, concrete and scaffolding worker at the Taino towers location from approximately 7:30 a.m. until on or about 5:00 p.m., Mondays through Saturdays (typically 54 hours per week).

44.     Throughout his employment, Defendants paid Plaintiff Marte his wages in cash.

45.     From approximately July 2015 until on or about December 2015, Defendants paid Plaintiff Marte $14.00 per regular and overtime hour.

46.     Plaintiff Marte was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

47.     Instead, defendants only permitted Plaintiff Marte to sign in but did not permit him to sign out.

48.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Marte regarding overtime and wages under the FLSA and NYLL.

49.     Defendants did not provide Plaintiff Marte an accurate statement of wages, as required by NYLL 195(3).

50.     Defendants did not give any notice to Plaintiff Marte, in English and in Spanish (Plaintiff Marte's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

51.     Defendants required Plaintiff Marte to purchase "tools of the trade" with his own funds—including a helmet, a hammer, a spatula, and a harness.

*Plaintiff Edgar Gonzalez Licona*

52.     Plaintiff Gonzalez was employed by Defendants from approximately July 2015 until on or about December 12, 2017.

53.     Defendants employed Plaintiff Gonzalez as a construction worker.

54.     Plaintiff Gonzalez regularly handled goods in interstate commerce, such as construction and building materials and other supplies produced outside the State of New York.

55.     Plaintiff Gonzalez's work duties required neither discretion nor independent judgment.

56.     Throughout his employment with Defendants, Plaintiff Gonzalez regularly worked in excess of 40 hours per week.

57.     From approximately July 2015 until on or about December 2015, Plaintiff Gonzalez worked as a construction worker at the Taino Towers location from approximately 7:30 a.m. until on or about 6:00 p.m., Mondays through Fridays and from approximately 7:30 a.m. until on or about 3:30 p.m., on Saturdays (typically 56 hours per week).

58.     From approximately January 2016 until on or about October 2017, Plaintiff Gonzalez worked as a construction worker at the Taino Towers location from approximately 7:30 a.m. until

on or about 5:00 p.m., Mondays through Fridays and from approximately 9:00 a.m. until on or about 3:30 p.m., on Saturdays (typically 51 hours per week).

59.     From approximately October 2017 until on or about December 12, 2017, Plaintiff Gonzalez worked as a construction worker at the Park avenue location from approximately 8:00 a.m. until on or about 4:30 p.m., Mondays through Fridays and from approximately 9:00 a.m. until on or about 3:00 p.m., on Saturdays (typically 45.5 hours per week).

60.     Throughout his employment, Defendants paid Plaintiff Gonzalez his wages in cash.

61.     From approximately July 2015 until on or about December 12, 2017, Defendants paid Plaintiff Gonzalez $18.75 per regular and overtime hour.

62.     Plaintiff Gonzalez was not required to keep accurate track of his time, nor to his knowledge, did the Defendants utilize any accurate time tracking device such as punch cards, that accurately reflected his actual hours worked.

63.     Instead, defendants only permitted Plaintiff Gonzalez to sign in but did not permit him to sign out.

In addition, defendants required Plaintiff Gonzalez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

64.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gonzalez regarding overtime and wages under the FLSA and NYLL.

65.     Defendants did not provide Plaintiff Gonzalez an accurate statement of wages, as required by NYLL 195(3).

66.     In fact, Defendants adjusted Plaintiff Gonzalez's paystubs so that they reflected inaccurate wages and hours worked.

67.     Defendants did not give any notice to Plaintiff Gonzalez, in English and in Spanish (Plaintiff Gonzalez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

68.     Defendants required Plaintiff Gonzalez to purchase "tools of the trade" with his own funds—including three helmets, two hammers, five pairs of gloves, an engineering kit, a harness belt and three pairs of Caterpillar boots.

*Plaintiff Edgar Gonzalez Oliva*

69.     Plaintiff Oliva was employed by Defendants from approximately May 2015 until on or about December 12, 2017.

70.     Defendants employed Plaintiff Oliva as a construction worker.

71.     Plaintiff Oliva regularly handled goods in interstate commerce, such as construction and building materials and other supplies produced outside the State of New York.

72.     Plaintiff Oliva's work duties required neither discretion nor independent judgment.

73.     Throughout his employment with Defendants, Plaintiff Oliva regularly worked in excess of 40 hours per week.

74.     From approximately May 2015 until on or about December 24, 2015, Plaintiff Oliva worked as a construction worker at the Taino Towers location from approximately 7:30 a.m. until on or about 6:00 p.m., Mondays through Fridays and from approximately 8:30 a.m. until on or about 3:30 p.m., on Saturdays (typically 56.5 hours per week).

75.     From approximately December 25, 2015 until on or about August 2017, Plaintiff Oliva worked as a construction worker at the Taino Towers location from approximately 7:30 a.m. until on or about 5:00 p.m., Mondays through Fridays and from approximately 8:30 a.m. until on or about 3:30 p.m., on Saturdays (typically 51.5 hours per week).

76.     From approximately August 2017 until on or about December 12, 2017, Plaintiff Oliva worked as a construction worker at the Park Avenue location from approximately 8:00 a.m. until on or about 4:30 p.m., Mondays through Fridays and from approximately 9:00 a.m. until on or about 3:00 p.m., on Saturdays (typically 45.5 hours per week).

77.     From approximately May 2015 until on or about June 2017, Defendants paid Plaintiff Oliva his wages in cash.

78.     From approximately June 2017 until on or about December 12, 2017, Defendants paid Plaintiff Oliva his wages in a combination of check and cash.

79.     From approximately May 2015 until on or about June 2017, Defendants paid Plaintiff Oliva $21.75 per regular and overtime hour.

80.     From approximately June 2017 until on or about December 12, 2017, Defendants paid Plaintiff Oliva $22.00 per regular and overtime hour.

81.     Plaintiff Oliva was not required to keep accurate track of his time, nor to his knowledge, did the Defendants utilize any accurate time tracking device such as punch cards, that accurately reflected his actual hours worked.

82.     Instead, defendants only permitted Plaintiff Oliva to sign in but did not permit him to sign out.

83.     In addition, defendants required Plaintiff Oliva to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

84.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Oliva regarding overtime and wages under the FLSA and NYLL.

85.     Defendants did not provide Plaintiff Oliva an accurate statement of wages, as required by NYLL 195(3).

86.     In fact, Defendants adjusted Plaintiff Oliva's paystubs so that they reflected inaccurate wages and hours worked.

87.     Defendants did not give any notice to Plaintiff Oliva, in English and in Spanish (Plaintiff Oliva's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

88.     Defendants required Plaintiff Oliva to purchase "tools of the trade" with his own funds—including a construction belt, a helmet, a hammer, a knife, two pairs of Timberland boots and a pair of Dr. Martin boots.

*Plaintiff Manuel Sanchez Vielma*

89.     Plaintiff Sanchez was employed by Defendants from approximately July 2015 until on or about November 2015.

90.     Defendants employed Plaintiff Sanchez as a mechanic in scaffolding.

91.     Plaintiff Sanchez regularly handled goods in interstate commerce, such as construction and building materials and other supplies produced outside the State of New York.

92.     Plaintiff Sanchez's work duties required neither discretion nor independent judgment.

93.     Throughout his employment with Defendants, Plaintiff Sanchez regularly worked in excess of 40 hours per week.

94.     From approximately July 2015 until on or about November 2015, Plaintiff Sanchez worked as a mechanic in scaffolding at the Taino Towers location from approximately 8:00 a.m. until on or about 6:00 p.m., Mondays through Fridays (typically 47.5 hours per week).

95.     Throughout his employment, Defendants paid Plaintiff Sanchez his wages in cash.

96.     From approximately July 2015 until on or about November 2015, Defendants paid Plaintiff Sanchez $19.37 per regular and overtime hour.

97.     Plaintiff Sanchez was not required to keep accurate track of his time, nor to his knowledge, did the Defendants utilize any accurate time tracking device such as punch cards, that accurately reflected his actual hours worked.

98.     Instead, defendants only permitted Plaintiff Sanchez to sign in but did not permit him to sign out.

99.     In addition, defendants required Plaintiff Sanchez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

100.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Sanchez regarding overtime and wages under the FLSA and NYLL.

101.    Defendants did not provide Plaintiff Sanchez an accurate statement of wages, as required by NYLL 195(3).

102.    Defendants did not give any notice to Plaintiff Sanchez, in English and in Spanish (Plaintiff Sanchez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

103.    Defendants required Plaintiff Sanchez to purchase "tools of the trade" with his own funds—including a hammer, a helmet, a pair of boots and a harness for safety.

*Defendants' General Employment Practices*

104.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate overtime compensation and spread of hours pay as required by federal and state laws.

105.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked...

106.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

107.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

108.     In fact, defendants only Permitted Plaintiffs to sign in, but did not permit them to sign out.

109.     In addition, defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in order to release their wages.

110.      Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked.

111.     Plaintiffs were paid their wages in cash or in a combination of check and cash.

112.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

113.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

114.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

115.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

116.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

117.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

118.     Plaintiffs bring their FLSA overtime compensation and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly

situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

119.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA and willfully failing to keep records required by the FLSA.

120.     The claims of Plaintiffs stated herein are similar to those of the other employees.

### FIRST CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

121.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

122.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

123.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

124.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

125.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

126.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

127.     Plaintiffs (and the FLSA Class members), were damaged in an amount to be determined at trial.

<u>SECOND CAUSE OF ACTION</u>

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

128.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

129.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

130.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

131.     Plaintiffs were damaged in an amount to be determined at trial.

<u>THIRD CAUSE OF ACTION</u>

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW**

132.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

133.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

134.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

135.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

136.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

137.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

138.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

139.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

140.    Plaintiffs were damaged in an amount to be determined at trial.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(d)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(e)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid overtime compensation and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)    Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)    Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(i)    Awarding Plaintiffs damages for the amount of unpaid overtime compensation and for any improper deductions or credits taken against wages as applicable

(j)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(k)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(l)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(m)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(n)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(o)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
        January 5, 2018

                                   MICHAEL FAILLACE & ASSOCIATES, P.C.

                        By:     _____/s/ Michael Faillace_____
                                Michael Faillace [MF-8436]
                                60 East 42nd Street, Suite 4510
                                New York, New York 10165
                                Telephone: (212) 317-1200
                                Facsimile: (212) 317-1620
                                *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 15, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                           Carlos Idenis Marte Rosario

                                        Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:                      _Carlos Marte_

                                        15 de diciembre de 2017

Date / Fecha:

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 13, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Edgar Gonzalez Licona

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                        13 de diciembre de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 13, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Edgar Gonzalez Oliva

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:                          Edgar Gonzalez Oliva

Date / Fecha:                                  13 de diciembre de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

December 14, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          **Manuel Sanchez Vielma**

                                        Michael Faillace & Associates, P.C.
Legal Representative / Abogado:

                                        _MANUEL SANCHEZ_

Signature / Firma:

                                        14 de diciembre de 2017

Date / Fecha:

_Certified as a minority-owned business in the State of New York_