# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into as of the Effective Date, defined below, between Carlos Idenis Marte Rosario ("Rosario"), Edgar Gonzalez Licona ("Licona"), Edgar Gonzalez Oliva ("Oliva"), Manuel Sanchez Vielma ("Vielma") and Jose Felipe Diego ("Diego") (collectively, "Plaintiffs"), Euro Structure, LLC, d/b/a Euro Structure and Marek Wnorowski (collectively, "Euro Structure"), Structural Preservation Systems, LLC, d/b/a Structural, Structural Group, Inc., d/b/a Structural, John Crigler ("Crigler"), Garry Naughton ("Naughton") and Peter H. Emmons ("Emmons") (collectively "Structural") (Euro Structure and Structural collectively are "Defendants"). Plaintiffs and Defendants are collectively referred to as the "Parties" and individually as a "Party".

## WITNESSETH:

**WHEREAS,** Plaintiffs have made certain allegations against Defendants regarding Defendants' failure to pay wages to them arising out of their alleged employment with Defendants in a complaint (inclusive of any amendments), Civil Action No. 18-cv-00083, filed in the United States District Court for the Southern District of New York (the "Action");

**WHEREAS,** Defendants have denied and continue to deny the allegations made against them contained in the Action or that they engaged in any other wrongful conduct against Plaintiffs;

**WHEREAS,** with the assistance of Magistrate Judge Henry B. Pitman during a settlement conference held on May 29, 2018, the Parties agreed to resolve this matter solely to avoid the costs, burdens and uncertainty of protracted litigation; and the execution of this Agreement shall not be construed as an admission of liability of any nature by Defendants, and in fact it is understood that Defendants have expressly disclaimed liability; and

**WHEREAS,** the Parties acknowledge that *bona fide* disputes and controversies exist between them, both as to liability and the amount thereof, if any, and by reason of such disputes and controversies they desire to compromise and have agreed to resolve amicably and settle fully, finally, and in a confidential manner all of their past, present, and any future claims, disputes, and potential disputes that existed or may exist, including but not limited to those relating to the subject matter of the disputes, arising out of or related to Plaintiffs' allegations in the Action, pursuant to the terms and conditions of this Agreement;

**NOW, THEREFORE,** in consideration of the above recitals and mutual releases, promises, rights, covenants, and obligations contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties, having been represented by counsel and intending to be legally bound, and having independently concluded that it is in their respective best interests to do so, agree as follows:

(The foregoing "whereas" clauses are true and correct and incorporated by reference as part of this Agreement.)

1. **Settlement Payment.**

a. Structural shall pay Plaintiffs a total sum of Ten Thousand Dollars and Zero Cents ($10,000.00) (the "Structural Payment") within thirty (30) days following the date on which the Court in the Action enters an Order approving this Agreement, provided that: (a) this Agreement and the attached Stipulation of Dismissal ("Stipulation") are fully executed by the Parties; (b) the Court approves this Agreement and its settlement terms; and (c) the Stipulation is So-Ordered by the Court.

b. Subject to the conditions set forth in Section 1.a. above, the Structural Payment will be delivered via mail to Michael Faillace & Associates, P.C. c/o Shawn Clark, Esq., 60 East 42nd Street, Suite 4510, New York, New York 10165 in the form of six (6) checks as follows:

i. The first check issued by Structural will be in the gross amount of Six Hundred Three Dollars and Sixteen Cents ($603.16), and made payable to "Carlos Idenis Marte Rosario."

ii. The second check issued by Structural will be in the gross amount of Eighteen Hundred and Eight Dollars and Fifty Cents ($1,808.50), and made payable to "Edgar Gonzalez Licona."

iii. The third check issued by Structural will be in the gross amount of Two Thousand and Thirty Seven Dollars and Seventy Five Cents ($2,037.75), and made payable to "Edgar Gonzalez Oliva."

iv. The fourth check issued by Structural will be in the gross amount of Five Hundred and Seventy Nine Dollars and Sixty Six Cents ($579.66), and made payable to "Manuel Sanchez Vielma."

v. The fifth check issued by Structural will be in the gross amount of One Thousand Six Hundred Thirty Seven Dollars and Sixty Cents ($1,637.60), and made payable to "Jose Felipe Diego."

vi. The sixth check issued by Structural will be in the amount of Three Thousand Three Hundred and Thirty Three Dollars and Thirty Three Cents ($3,333.33), and made payable to "Michael Faillace & Associates, P.C.," Plaintiffs' attorneys, as and for attorneys' fees and costs.

c. Euro Structure shall pay Plaintiffs a total sum of Sixty Thousand Dollars and Zero Cents ($60,000.00) (the "Euro Payment") in monthly installments to be paid in full within nine (9) months following the date on which the Court in the Action enters an Order approving this Agreement, provided that: (a) this Agreement and the Stipulation of Dismissal attached hereto ("Stipulation") are fully executed by the Parties; (b) the Court approves this Agreement and its settlement terms; and (c) the Stipulation is So-Ordered by the Court. First payment within 30 days thereafter.

FG SC

d. Subject to the conditions set forth in Section 1.c. above, the Euro Payment shall be delivered to Michael Faillace & Associates, P.C. c/o Shawn Clark, Esq., 60 East 42nd Street, Suite 4510, New York, New York 10165 as follows:

i. Euro Structure shall pay Rosario the gross amount of Eight Hundred and Nine Dollars and Forty-Nine Cents ($1,809.49), less any and all applicable taxes and withholdings, in nine equal monthly installment checks, made payable to "Carlos Idenis Marte Rosario" which shall represent payment of alleged wage damages. Euro Structure shall also pay Rosario the gross amount of Eight Hundred and Nine Dollars and Thirty-Nine Cents ($1,809.39), in nine equal monthly installment checks, made payable to "Carlos Idenis Marte Rosario" which shall represent payment of alleged liquidated damages.

ii. Euro Structure shall pay Licona the gross amount of Five Thousand Four Hundred and Twenty-Five Dollars and Fifty Cents ($5,425.50), less any and all applicable taxes and withholdings, in nine equal monthly installment checks, made payable to "Edgar Gonzalez Licona" which shall represent payment of alleged wage damages. Euro Structure shall also pay Licona the gross amount of Five Thousand Four Hundred and Twenty-Five Dollars and Fifty Cents ($5,425.50), in nine equal monthly installment checks, made payable to "Edgar Gonzalez Licona" which shall represent payment of alleged liquidated damages.

iii. Euro Structure shall pay Oliva the gross amount of Six Thousand One Hundred Thirteen Dollars and Twenty Five Center ($6,113.25), less any and all applicable taxes and withholdings, in nine equal monthly installment checks, made payable to "Edgar Gonzalez Oliva" which shall represent payment of alleged wage damages. Euro Structure shall also pay Oliva the gross amount of Six Thousand One Hundred Thirteen Dollars and Twenty Five Center ($6,113.25), in nine equal monthly installment checks, made payable to "Edgar Gonzalez Oliva" which shall represent payment of alleged liquidated damages.

iv. Euro Structure shall pay Vielma the gross amount of One Thousand Seven Hundred and Thirty Eight Dollars and Ninety Seven Cents ($1,738.97), less any and all applicable taxes and withholdings, in nine equal monthly installment checks, made payable to "Manuel Sanchez Vielma" which shall represent payment of alleged wage damages. Euro Structure shall also pay Vielma the gross amount of One Thousand Seven Hundred and Thirty Eight Dollars and Ninety Seven Cents ($1,738.97), in nine equal monthly installment checks, made payable to "Manuel Sanchez Vielma" which shall represent payment of alleged liquidated damages.

v. Euro Structure shall pay Diego the gross amount of Four Thousand Nine Hundred and Twelve Dollars and Seventy Nine Cents ($4,912.79), less any and all applicable taxes and withholdings, in nine equal monthly installment checks, made payable to "Jose Felipe Diego" which shall represent payment of alleged wage damages. Euro Structure shall also pay

                    Diego the gross amount of Four Thousand Nine Hundred and Twelve Dollars and Seventy Nine Cents ($4,912.79), in nine equal monthly installment checks, made payable to "Jose Felipe Diego" which shall represent payment of alleged liquidated damages.

SK FG SC vi. Euro Structure shall issue ~~a lump sum~~ nine (9) equal monthly installment checks ~~in~~ the amount of twenty Thousand Dollars and No Cents ($20,000.00), made payable to "Michael Faillace & Associates, P.C.," Plaintiffs' attorneys, as and for attorneys' fees and costs with the first set of installment checks delivered to Plaintiffs' attorneys pursuant to Article 1(d).

e. It is the intent and desire of Plaintiffs that the designated portions of the Euro Payment described in Sections 1.d.(i) through (v) of this Agreement shall constitute the payment of wages and shall, therefore, be subject to all applicable federal, state, and local tax withholdings in accordance with the most recent IRS Form W-4 executed by the Plaintiffs and on file with Euro Structure. Euro Structure shall issue an IRS Form W-2 to Plaintiffs with respect to this portion of the Payment.

f. The Structural Payment referred to in Section 1.b.vi and the designated portions of the Euro Payment referred to in Section 1.d. vi shall be treated as 1099 income under the Internal Revenue Code and any state or local applicable law or regulation. Michael Faillace & Associates, P.C., shall provide each of Euro Structure and Structural with a fully executed IRS form W-9 as a pre-condition to the issuance of these checks.

g. The intent and desire of Plaintiffs is that the portion of the Structural Payment paid to Plaintiffs pursuant to Sections 1.b.(i) through (v) of this Agreement and designated portions of the Euro Payment pursuant to Section 1.d (i) through (v) shall not be attributable to nor shall it be considered as, in the nature of, or substitute for, wages. Rather, it is intended by Plaintiffs that the Structural Payment paid to Plaintiffs pursuant to Sections 1.b.(i) through (v) of this Agreement and designated portions of the Euro Payment pursuant to Section 1.d (i) through (v) Agreement be in the nature of liquidated damages and interest. An IRS Form 1099 shall be issued to Plaintiffs with respect to the portion of the Structural Payment paid to Plaintiffs pursuant to Sections 1.b.(i) through (v) of this Agreement and designated portions of the Euro Payment pursuant to Section 1.d (i) through (v). Plaintiffs shall provide Structural and Euro with a fully executed IRS Form W-9 as a precondition of the payment of the portion of Structural Payment paid to Plaintiffs pursuant to Sections 1.b.(i) through (v) of this Agreement and designated portions of the Euro Payment pursuant to Section 1.d (i) through (v). Plaintiffs acknowledge and agree that Structural and Euro are not providing any tax advice or representation by this Agreement. Plaintiffs are personally responsible for payment of all taxes and any tax liability resulting from the payment of any portion of the Structural Payment or Euro Payment allocated as non-wage damages and interest. To the extent that there are any additional tax consequences to Plaintiffs, Structural and/or Euro arising from the payment of this portion of the Structural Payment and Euro Payment, other than those normally attendant to 1099 income, Plaintiffs agree to indemnify and hold Structural and Euro harmless for all additional taxes, interest, and penalties. Plaintiffs further agree to indemnify and hold Structural and Euro harmless for any damages, penalties, interests, judgments and costs, including attorneys' fees, associated with the enforcement of this indemnification provision, should such enforcement

measures become necessary. The Parties shall promptly notify each other of any claim or inquiry by the IRS or any other governmental authority arising under or related to this Agreement.

      h.      The Parties acknowledge and agree that the Structural Payment and Euro Payment is made in satisfaction of all claims that were or could have been asserted by Plaintiffs, including but not limited to all claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), and to any and all attorneys' fees, costs, expenses, liquidated damages, interest, and administrative costs. Plaintiffs agree that they have no future entitlement to any compensation, wages, tips, gratuities, overtime, salary, bonus, commissions, payouts, severance pay, vacation pay or benefits, damages, attorneys' fees or costs other than have been asserted in the Action and the Plaintiffs shall not bring or participate in any subsequent action to the contrary. The Parties further acknowledge and agree that the Structural Payment and Euro Payment and the obligations set forth in Section 1 of this Agreement shall constitute full and final settlement of all past, present, and future claims and causes of action by Plaintiffs against Defendants arising out of or related to Plaintiffs' alleged employment with Defendants, and all possible claims or issues relative to Plaintiffs' allegations will be forever settled in their entireties.

2. **Mutual General Releases.**

a. As a material inducement to Defendants to enter into this Agreement, and in consideration of the Structural Payment and Euro Payment and other consideration, the receipt and value of which is hereby agreed to and acknowledged, on behalf of themselves, their heirs, successors, representatives, assigns, attorneys, agents, executors, and administrators ("Releasors"), hereby irrevocably and unconditionally release, acquit, and forever discharge Defendants and their present, past, and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, divisions, directors, officers, trustees, members, employees, stockholders, representatives, insurers, business managers, accountants, attorneys, heirs, agents, executors, and administrators, in their individual and representative capacities, and all persons acting by, through, and under, or in concert with any of these (hereinafter collectively referred to as "Releasees"), from any and all charges, complaints, claims, liabilities, obligations, suits, demands, rights, liens, costs, losses, debts, expenses, agreements, contracts, covenants, actions, suits, causes of action, judgments, and orders of whatever kind or nature in law, equity, or otherwise, including but not limited to, all claims for penalties, general damages, punitive damages, compensatory damages, special damages, equitable relief, attorneys' fees, and costs actually incurred, of any nature whatsoever known or unknown, suspected or unsuspected, concealed or hidden, that Releasors had, now have, or in the future may or could have against Releasees, arising out of or relating to any matter of Plaintiffs' employment up to the Effective Date of this Agreement, including, any claim, whether brought on an individual basis or as part of a class, collective, or representative action, under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq.; the Older Worker Benefits Protection Act of 1990; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k); the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1991); 42 U.S.C. § 1981; 42 U.S.C. § 1983; the National Labor Relations Act, 29 U.S.C. § 151 et seq.; the Equal Pay Act of 1963, 29 U.S.C. § 206(d); the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.; the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.; The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.; the New York State Human Rights Law, N.Y. Executive Law § 290 et seq.; the New York City Human Rights Law, New York City Charter and Administrative Code; Title VIII, § 8-107 et seq.; the New York Civil Rights Law, N.Y. Civil Rights Law § 79-e et seq.; New York Labor Law, § 1 et seq.; the New York Workers' Compensation Law, N.Y. Workers' Compensation Law § 1 et seq (to the extent of Plaintiffs' claims of unpaid overtime, unlawfully deducted wages, failure to provide wage notices, failure to pay spread of hours premium, retaliation, and unlawful withholding of wages); any other federal, state, and local equal employment, fair employment, or civil or human rights law (whether statutory, regulatory, or decisional); the statutory, regulatory, or common law of any jurisdiction, including, but not limited to, any and all tort claims (e.g., assault; battery; false imprisonment; defamation; intentional infliction of emotional distress; negligent infliction of emotional distress; wrongful termination; negligent hiring, supervision and/or retention; conversion; interference with contract; abusive discharge; and/or loss of consortium, companionship, services or society), any and all contract claims (e.g., breach of contract, fraud, and/or breach of covenant of good faith and fair dealing) and under any and all applicable federal, state and local laws, administrative rules or regulations, including any and all claims already asserted and unasserted and related to Plaintiffs' employment with Defendants (or their relationship with any other Releasee) and the cessation thereof.

b.  As a material inducement to Plaintiffs to enter into this Agreement, Defendants, in Defendants, in their individual and representative capacities, and their heirs, executors, administrators, present, past and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, agents, divisions, directors, officers, trustees, members, employees, stockholders, representatives, insurers, attorneys and all persons acting by, through, under or in concert with any of these, on behalf of themselves, (hereinafter collectively referred to as "Defendant Releasors") hereby irrevocably and unconditionally release, acquit and forever discharge Plaintiffs, their heirs, successors, representatives, agents, executors and administrators, present, past and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, agents, divisions, directors, officers, trustees, members, employees, stockholders, representatives, insurers, attorneys, in their individual and representative capacities, and all persons acting by, through, under, or in concert with any of these on behalf of themselves (hereinafter collectively referred to as "Plaintiff Releasees") from any and all charges, complaints, claims, liabilities, obligations, suits, demands, costs, losses, debts and expenses, including, but not limited to, all claims for penalties, general damages, punitive damages, compensatory damages, special damages, equitable relief, attorneys' fees and costs actually incurred, of any nature whatsoever known or unknown, suspected or unsuspected, which against the Plaintiff Releasees the Defendant Releasors had, now have, or in the future may or could have, arising out of or relating to any matter up to the effective date of this Agreement, whether under any theory, including, but not limited to, any and all claims in connection with Plaintiffs' alleged employment with Defendant Releasors and the cessation thereof, including but not limited all claims or causes of action that Defendant Releasors may have with respect to breach of contract, implied or express; impairment of economic opportunity; intentional or negligent infliction of emotional distress; false arrest; assault; battery; false imprisonment; invasion of privacy; prima facie tort; defamation; libel; slander; negligent termination; malicious prosecution; the Complaint; Amended Complaint or any other tort, whether intentional or negligent; or any claim or cause of action known or unknown.

c.  As a material inducement to Defendants to enter into this Agreement, Euro Structure and Structural, in their individual and representative capacities, and their heirs, executors, administrators, present, past and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, agents, divisions, directors, officers, trustees, members, employees, stockholders, representatives, insurers, attorneys and all persons acting by, through, under or in concert with any of these, on behalf of themselves, hereby irrevocably and unconditionally release, acquit and forever discharge, to the maximum extent permitted by law, the other Party from any and all charges, complaints, claims, liabilities, obligations, suits, demands, costs, losses, debts and expenses, including, but not limited to, all claims for penalties, general damages, punitive damages, compensatory damages, special damages, equitable relief, attorneys' fees and costs actually incurred, of any nature whatsoever known or unknown, suspected or unsuspected, which against Euro Structure and Structural had, now have, or in the future may or could have, arising out of or relating to any matter up to the Effective Date, whether under any theory, including, but not limited to, any and all claims in connection with Plaintiffs' alleged employment with Defendants and the cessation thereof, and including but not limited all claims or causes of action that Defendants may have with respect to the Action; breach of contract, implied or express; impairment of economic opportunity; intentional or negligent infliction of emotional distress; false arrest; assault; battery; false imprisonment; invasion of privacy; prima facie tort;

defamation; libel; slander; negligent termination; malicious prosecution; or any other tort, whether intentional or negligent; contribution; indemnification; or any claim or cause of action known or unknown.

  d. Notwithstanding anything else set forth herein, nothing herein shall be deemed a waiver of: (i) claims for breach of this Agreement; (ii) claims that may arise based upon events occurring after the Effective Date; or (iii) claims that cannot be waived as a matter of law.

  e. Plaintiffs acknowledge that they may discover facts or law different from or in addition to the facts or law they know or believe to exist with respect to a released claim. They agree, nonetheless, that this Agreement and the releases contained in it shall be and remain effective in all respects notwithstanding such different or additional facts or law.

  f. Plaintiffs acknowledge that they were paid and have received all compensation, wages, tips, gratuities, bonuses, commissions, and benefits to which they were entitled and that no leave, compensation, wages, tips, gratuities, bonuses, commissions, or benefits are due to them from Defendants. Further, Plaintiffs acknowledge and agree that they have not suffered any workplace injury that has not already been reported to and/or addressed by Defendants.

  g. If any legal proceeding, whether individual or class action, is instituted in court or a federal, state, or local administrative agency, including but not limited to any proceeding conducted by either the federal or state Departments of Labor (collectively referred to herein as "Proceeding"), Plaintiffs waive all relief available to them (including, without limitation, monetary damages, equitable relief, and reinstatement) under any of the claims and/or causes of action waived in Section 2 of this Agreement. Therefore, Plaintiffs agree that they will not accept any award or settlement from any source or Proceeding (including but not limited to any Proceeding brought by any other person or by any government agency) with respect to any claim or right waived in this Agreement. If any such Proceeding is currently in process, Plaintiffs agree that they will, to the extent of their ability, seek to have it closed with prejudice.

  h. Plaintiffs further agree, to the extent permitted by law, that neither they nor any person acting by, through, under, or in concert with them, will initiate, encourage, assist, or participate in any Proceeding, including but not limited to providing any information to a person bringing a Proceeding against Defendants or Releasees or to any third-party on behalf of that entity or person, unless lawfully subpoenaed or otherwise ordered to do so by a court or administrative agency in connection with any investigation it is conducting or as otherwise required by applicable law, concerning any of the claims and/or causes of action waived in Article 2 of this Agreement. Should any Plaintiff(s) and/or any person acting by, through, under, or in concert with him/them be subpoenaed or subjected to court order to attend to testify, Plaintiff(s) shall notify Defendants within seventy-two (72) hours of Plaintiff's/Plaintiffs' receipt of said subpoena or court order (unless compliance with the subpoena or court order is demanded in less than seventy-two (72) hours, in which case notice shall occur within twenty-four (24) hours of receipt of the subpoena or court order) by sending a copy of the subpoena or court order to the attention of Defendants, pursuant to Section 17 hereof, so that compliance or objection to same can be directed or raised by Defendants.

3. **Non-Publication.** Plaintiffs agree that they will not in any manner publicize the terms of this Settlement Agreement, which includes notifying any member of the media regarding the terms and conditions of the Settlement Amount or Agreement and posting or disseminating the terms and conditions of the Settlement Amount or Agreement on any social media (including, but not limited to, Facebook, Twitter, Instagram, Law 360 or similar media outlets). Such prohibition extends to dissemination of any information, whether oral, electronic or in any document form including but not limited to providing copies of this Agreement, and information regarding the terms of this Agreement. Dissemination of this Agreement and the terms set forth herein shall be limited to filing documents with the Court, as is necessary to effectuate the Agreement, as may be required by law or governmental agency, for tax purposes, or pursuant to subpoena or court order. Plaintiffs may state that the matter: has been settled to the satisfaction of the Parties. Notwithstanding the aforementioned provision, nothing herein shall preclude Plaintiffs from divulging any information to any agency of the federal, state or local government or court pursuant to court order and/or subpoena, for which appearance Plaintiffs may receive any fees allowed by law. Plaintiffs agree to notify Defendants within ten (10) business days if they are compelled by subpoena or court order, or otherwise contacted by any third parties, to appear and testify concerning matters encompassed by this Agreement. Plaintiffs also agree they will not contest Defendants' standing to move to quash any such subpoena. Nothing in this Article 3 shall prohibit the Parties from speaking truthfully about their claims and/or defenses, under the FLSA or NYLL, or the resolution thereof. Further, nothing in this Article 3 shall prevent the Parties from filing the executed Settlement Agreement with the Court for approval, or the Court from publishing the details of the resolution of those claims.

4. **No Future Employment.** Plaintiffs and Defendants agree that should Plaintiffs apply to work for either Euro Structure or Structural, in any capacity, either Euro Structure or Structural, based on this clause, may deny Plaintiffs employment for any position they seek.

5. **Mutual Non-Disparagement.**

   a. Plaintiffs agree that, at all times following the Effective Date of this Agreement, they shall not publish or communicate to any person or entity, or direct others to publish or communicate to any person or entity, any Disparaging Remarks concerning Defendants. Plaintiffs shall not be deemed to be in breach of this provision, however, by providing truthful testimony to any court or governmental agency. For purposes of this Agreement, the term "Disparaging Remarks" shall mean remarks, comments, statements, or communications (in any form, including but not limited to written, oral, or electronic) that: (i) reflect adversely upon the affairs or practices of the person or entity about whom remarks are made or (ii) impugn the character, honesty, integrity, morality, acumen, or abilities of the person or entity upon whom remarks are being made or upon whom remarks are being commented.

   b. Defendants agree that, at all times following the Effective Date, Crigler, Naughton, Emmons and Wnorowski shall not publish or communicate to any person or entity any Disparaging Remarks concerning Plaintiffs and shall not instruct or direct others to do so.

   c. Euro Structure agrees that if any prospective employer of any Plaintiff shall contact Euro Structure for reference or recommendations, Euro Structure shall only confirm each Plaintiff's

dates of employment and job title(s) held with Euro Structure. All such communications from prospective employers to Euro Structure shall be directed to the attention of Wnorowski.

d. Crigler, Naughton and Emmons and Wnorowski mutually agree they shall not publish or communicate to any person or entity any Disparaging Remarks concerning each other, Structural or Euro Structure and shall not instruct or direct others to do so.

e. Structural agrees that if any prospective employer of any Plaintiff shall contact Structural, Structural shall respond that each Plaintiff was directly employed by Euro Structure, a subcontractor, to work on certain construction projects where Structural was the general contractor. All such communications from prospective employers shall be directed to the attention of Naughton.

f. Truthful statements about the Parties' experiences in litigating their claims and defenses herein under the FLSA and NYLL shall not be deemed to be Disparaging Remarks under or otherwise a violation of, this Article.

6. **Remedy for Breach**. In the event a Party fails to comply with the terms and conditions of this Agreement, the non-breaching Party shall be entitled, in addition to any other right or remedy it may have at law or in equity related to breaches of this Agreement, to all reasonable costs associated with enforcing this Article and the Agreement overall, including but not limited to attorneys' fees, if said non-breaching Party prevails in a claim for breach of this Agreement, as determined by a court of competent jurisdiction.

7. **No Admissions**. Plaintiffs acknowledge and agree that Defendants have entered into this Agreement solely for the purpose of avoiding the burden, uncertainty, and cost of protracted proceedings and/or litigation. Further, neither this Agreement nor the furnishing of consideration for the general release intended shall be construed as an admission that Defendants or any Releasee has violated any federal, state, or local law (statutory or decisional), ordinance, or regulation, or that Defendants or any Releasee has committed any wrong against Plaintiffs.

8. **Representations and Acknowledgements**. Plaintiffs hereby represent and agree that they have been advised by Defendants of their right to discuss all aspects of this Agreement with an attorney, financial advisor, and/or representative of their choice; they have so consulted with an individual/entity of their choice and that individual/entity has answered any questions they might have had, or they had the opportunity to consult with an individual/entity of their choice and chose not to do so; they have carefully read all of the provisions of this Agreement; they fully understand all of the provisions of this Agreement; they have had a reasonable period of time to consider whether to enter into this Agreement; and they are voluntarily and knowingly entering into this Agreement.

9. **Acknowledgement of Waiver of Claims Under the ADEA.** Plaintiffs further represent, acknowledge and agree that they are waiving and releasing any rights they may have under the ADEA and that this waiver is knowing and voluntary. The Parties agree that this waiver and release does not apply to any rights or claims that may arise under the ADEA after the Effective Date. Plaintiffs further acknowledge that the consideration given for this Agreement is in addition to

anything of value to which Plaintiffs were already entitled. Plaintiffs further acknowledge that they have been advised by this writing that that they should consult with an attorney prior to executing this Agreement and acknowledge that they have at least twenty-one (21) days within which to consider this Agreement and if they take fewer than the 21 days to review this Agreement they are thereby waiving any and all rights to the balance of the 21 day period. Plaintiffs have also been advised that, as to their release of claims, pursuant to the ADEA, they have seven (7) days following the execution of this Agreement by the parties to revoke their decision to enter into this Agreement by providing written notice to Naughton, on behalf of Structural and Wnorowski, on behalf of Euro, delivered in person or post-marked to Naughton and Wnorowski, in which case the Agreement becomes null and void, including voiding any releases made by Defendants under this Agreement. This Agreement thus shall not be effective until the seven (7) day revocation period has expired.

10. **Entire Agreement**. This Agreement represents the complete and full settlement of any and all claims of Plaintiffs against Defendants or any Releasee under the FLSA and NYLL and fully supersedes any and all prior agreements or understandings between the Parties hereto pertaining to the subject matter hereof. Plaintiffs represent and acknowledge that in executing this Agreement, they do not rely upon any representation or statement made by Defendants with regard to the subject matter, basis, or effect of this Agreement other than those contained herein. This Agreement may not be changed in any respect, except by a writing, duly executed by the Parties or authorized representatives of the Parties.

11. **Capability to Waive Claims**. Plaintiffs are competent to affect a knowing and voluntary release and waiver of all claims as is contained herein, and hereby do so waive all such claims, and to enter into this Agreement and are not affected or impaired by use of alcohol, drugs, or other substances or otherwise impaired. None of the Plaintiffs is a party to any bankruptcy, lien, creditor-debtor, or other proceeding that could impair the right to settle all claims against Defendants or to waive all claims that Plaintiffs may have against Defendants as waived and released herein.

12. **No Waiver**. Failure to insist on compliance with any term, covenant, or condition contained in this Agreement shall not be deemed a waiver of that term, covenant, or condition, nor shall any waiver or relinquishment of any right or power at any other time or more times be deemed a waiver or relinquishment of any right or power at any other time or times.

13. **Severability**.

a. The provisions of this Agreement shall be deemed separate and severable. Should any provision or portion of the Agreement be held invalid or unenforceable, the affected provision shall be modified to the extent necessary to make it legal, valid, and enforceable. If it cannot be so modified, it shall be severed from the Agreement, and the remainder of this Agreement shall remain unaffected and continue in full force and effect, which then shall be interpreted to bar any and all claims Plaintiffs may have against Defendants.

b. If the release of claims contained in Section 2 of this Agreement is limited or held to be null and void, then: (i) this Agreement shall be interpreted or modified to bar any claim that Plaintiffs may assert, or if not so interpreted and/or modified, (ii) Plaintiffs shall execute an enforceable general and unlimited release of all claims. If, however, neither Section 12.b.(i) nor

Section 12.b.(ii) can be accomplished, as a matter of law, then Plaintiffs shall return, upon demand by Defendants, the Structural Payment and Euro Payment, or if its return is not permitted by law or not demanded by Defendants, such amount shall be a set-off against any recovery.

14. **Jointly Drafted Agreement**. This Agreement shall be deemed to have been jointly drafted by the Parties, and no provision herein shall be interpreted or construed for or against any Party because such Party drafted or requested such provision or this Agreement as a whole.

15. **Applicable Law, Jurisdiction, and Venue**. The interpretation and application of the terms of this Agreement shall be governed by the laws of the State of New York, excluding its conflicts of law provisions that would result in the application of the laws of any jurisdiction other than New York. The Parties submit to and recognize the exclusive jurisdiction and proper venue of the courts of the State of New York, County of New York, or the United States District Court for the Southern District of New York, sitting in New York, New York, over any action or other proceeding arising out of or in connection with this Agreement, or over the terms of any continuing obligation to Releasees. To the extent permitted by applicable law, the Parties waive and agree not to assert, by way of motion, as a defense, or otherwise, that the suit, action, or proceeding is brought in an inconvenient forum, that the venue of the suit, action, or proceeding is improper, or that this Agreement may not be enforced in or by such courts. The parties consent and stipulate to the jurisdiction of the United States District Court for the Southern District of New York and Magistrate Judge Henry Pitman for any future proceeding to enforce this Agreement, except Structural shall no longer be subject to any continuing jurisdiction of the court upon dispatch of the Structural Payment to Plaintiffs.

16. **No Assignment of Claims**. Plaintiffs represent and warrant that they have not assigned or hypothecated any claims herein released in any manner to any person or other entity, in any manner, directly or indirectly. Plaintiffs are not aware of any liens and/or pending legal claims applicable to the Payment. Plaintiffs also agree that they will be solely responsible to satisfy any liens or pending legal claims asserted against Plaintiffs or Releasees as against the Payment.

17. **Counterpart Signatures**. This Agreement may be signed in counterparts, provided that each Party receives a copy fully signed by the other Party. Electronic signatures such as fax or .pdf or .tiff files shall be given the same force and weight as if they were original signatures.

18. **Notice.** Any notice or other communication required or permitted to be given in connection with this Agreement shall be in writing and shall be mailed by e-mail or certified mail, return receipt requested, or by the most nearly comparable method of mailing from or to a location outside the United States, or by Federal Express, Express Mail, or similar overnight delivery or courier service or delivered in person to the Party to whom it is to be given at the address of such Party as set forth in this Section (or to such other address as the Party shall have furnished in writing in accordance with this Section):

> Carlos Idenis Marte Rosario, Edgar Gonzalez Licona, Edgar Gonzalez Oliva, Manuel Sanchez Vielma, Jose Felipe Diego c/o Michael Falliace & Associates,
> 60 East 42nd Street, Suite 4510

New York, New York 10165
Attn: Shawn Clark, Esq.
sclark@failliacelaw.com

Structural Preservation Systems, LLC c/o Garry Naughton
39 Utter Avenue
Hawthorne, NJ 07506
gnaughton@stuctural.net

CR FG SC

Euro Structure, LLC ~~c/o Severyn Rubisz, Esq.~~
~~31 Nassau Ave. Suite 67~~
~~Brooklyn, New York 11222~~
~~sr@rubiszlaw.com~~
Marek Wnorawski
148 North 9th Apt 2R
Brooklyn NY 11222

19. **Effective Date.** This Agreement shall become effective as of the date of the Order of the Court approving this Agreement or as of the date the Court So-Orders the Stipulation, whichever is later, without need of any further action by any Party or the Court.

CR FG SC

**PLAINTIFFS ACKNOWLEDGE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT; THAT THIS AGREEMENT HAS BEEN FULLY EXPLAINED TO THEM BY COUNSEL OF THEIR CHOICE, NAMELY ~~[illegible]~~ Michael Falliace & Associates; THAT THEY FULLY UNDERSTAND THE FINAL AND BINDING EFFECT OF THIS AGREEMENT; THAT THE ONLY PROMISES MADE TO THEM IN EXCHANGE FOR SIGNING THIS AGREEMENT ARE THOSE STATED ABOVE; AND, THAT THEY ARE SIGNING THIS AGREEMENT VOLUNTARILY IN ORDER TO FINALLY, COMPLETELY AND CONCLUSIVELY SETTLE ALL MATTERS THAT WERE OR COULD HAVE BEEN RAISED IN THE COMPLAINT AND/OR THE AMENDED COMPLAINT. PLAINTIFFS AGREE TO WAIVE AND RELEASE ANY CLAIM THAT THIS AGREEMENT WAS PROCURED BY OR THAT THEY WERE INDUCED TO ENTER INTO THIS AGREEMENT BY FRAUD, DURESS, MISUNDERSTANDING, OR COERCION AND FURTHER WAIVE AND RELEASE ANY CLAIM FOR FRAUD IN THE INDUCEMENT OR ANY SIMILAR CLAIM.**

**CARLOS IDENIS MARTE ROSARIO**

By: [signature]
Carlos Idenis Marte Rosario

Date: 10-29-2018

**EDGAR GONZALEZ LICONA**

By: ______________________
Edgar Gonzalez Licona

Date: 10/18/2018

**EDGAR GONZALEZ OLIVA**

By: ______________________
Edgar Gonzalez Oliva

Date: 10/18/2018

**MANUEL SANCHEZ VIELMA**

By: ______________________
Manuel Sanchez Vielma

Date: 10-18-2018

**JOSE FELIPE DIEGO**

By: ______________________
Jose Felipe Diego

Date: 10-18-2018

**STRUCTURAL PRESERVATION SYSTEMS, LLC**

By: ____________________

Its CEO

Date: Nov 8, 2018

**STRUCTURAL GROUP, INC.**

By: Kelly E. Ulton

Its Senior Director, Human Resources

Date: 11/8/18

**GARRY NAUGHTON**

By: ____________________
Garry Naughton

Date: ____________________

**PETER EMMONS**

By: ____________________
Peter Emmons

Date: Nov 8, 2018

**JOHN CRIGLER**

By: ______________________
John Crigler

Date: 11/15/16

**EURO STRUCTURE, LLC**

By: ______________________
Marek Wnorowski

Its: ______________________

Date: ______________________

**MAREK WNOROWSKI**

By: ______________________
Marek Wnorowski

Date: ______________________

**EURO STRUCTURE, LLC**

By: ______________________
Marek Wnorowski

Its: Member

Date: 11-08-2018

**MAREK WNOROWSKI**

By: ______________________
Marek Wnorowski

Date: 11-08-2018