```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
CARLOS IDENIS MARTE ROSARIO,        :
et al.,
                                    :
                Plaintiffs,            18 Civ. 83 (HBP)
                                    :
   -against-                           OPINION
                                    :  AND ORDER
STRUCTURAL PRESERVATION SYSTEMS,
LLC, d/b/a "Structural," et al.,    :

                Defendants.         :
-----------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/27/19

PITMAN, United States Magistrate Judge:

I held a settlement conferences in this matter on May 29, 2018. A settlement was reached at the conference, and this matter is now before me on the parties' joint application to approve the settlement (Letter of Shawn R. Clark, Esq., to the undersigned, dated Nov. 16, 2018 (Docket Item ("D.I.") 81) ("Clark Letter")). All parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c).

Plaintiffs allege that they were construction workers employed by defendants at various times between May 2015 and December 2017 (First Amended Complaint, dated Jan. 25, 2018 (D.I. 20) ("Compl.") ¶¶ 5, 14-18). Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"), claiming that defendants

failed to pay overtime premium pay and failed to provide wage notices and wage statements (Compl. ¶¶ 138-54). According to plaintiffs, defendants owe $52,767.76 in unpaid wages, $52,767.76 in liquidated damages and $50,000 in statutory damages for wage notice and wage statement violations.

Defendants deny plaintiffs' claims and maintain that defendant Structural never employed plaintiffs.

As noted above, I presided over a settlement conference on May 29, 2018. The parties agreed to the material terms of the settlement at the conference and submitted their proposed settlement agreement for judicial approval on November 30, 2018 (Settlement Agreement and Release, annexed to Clark Letter (D.I. 81-1) ("Settlement Agreement")).

The Settlement Agreement provides that defendants will pay a total amount of $70,000 -- $46,666.67 to be paid to plaintiffs and $23,333.33 to be paid to plaintiffs' counsel for fees and costs (Settlement Agreement ¶¶ 1.a., 1.c.). Defendant Structural will pay a total amount of $10,000 within 30 days of approval of the settlement, to be allocated as follows: $603.16 to plaintiff Carlos Idenis Marte Rosario; $1,808.50 to plaintiff Edgar Gonzalez Licona; $2,037.75 to plaintiff Edgar Gonzalez Oliva; $579.66 to plaintiff Manuel Sanchez Vielma; $1,637.60 to plaintiff Jose Felipe Diego and $3,333.33 to plaintiffs' counsel

2

(Settlement Agreement ¶¶ 1.a., 1.b.).  Defendant Euro Structure will pay a total amount of $60,000 in nine monthly installments, to be allocated as follows:  $3,618.98 to plaintiff Carlos Idenis Marte Rosario; $10,851 to plaintiff Edgar Gonzalez Licona; $12,226.50 to plaintiff Edgar Gonzalez Oliva; $3,477.94 to plaintiff Manuel Sanchez Vielma; $9,825.58 to Jose Felipe Diego and $20,000 to plaintiff's counsel (Settlement Agreement ¶¶ 1.c., 1.d.).  The amount claimed by each plaintiff and the net amount each will receive after deduction of attorneys' fees and costs are as follows:

| Plaintiff | Length of Employment | Amount Claimed | Net Settlement Amount |
|---|---|---|---|
| Carlos Idenis Marte Rosario | 26 weeks | $15,798.38 | $4,222.14 |
| Edgar Gonzalez Licona | 127 weeks | $47,533.89 | $12,659.50 |
| Edgar Gonzalez Oliva | 137 weeks | $53,570.09 | $14,264.25 |
| Manuel Sanchez Vielma | 22 weeks | $15,176.89 | $4,057.60 |
| Jose Felipe Diego | 104 weeks | $43,033.55 | $11,463.18 |

Court approval of an FLSA settlement is appropriate

> "when [the settlement] [is] reached as a result of contested litigation to resolve <u>bona fide</u> disputes." <u>Johnson v. Brennan</u>, No. 10 Civ. 4712, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011).  "If the proposed

> settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." Id. (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)).

Agudelo v. E & D LLC, 12 Civ. 960 (HB), 2013 WL 1401887 at *1 (S.D.N.Y. Apr. 4, 2013) (Baer, D.J.) (alterations in original). "Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (Gorenstein, M.J.) (internal quotation marks omitted). In Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the Honorable Jesse M. Furman, United States District Judge, identified five factors that are relevant to an assessment of the fairness of an FLSA settlement:

> In determining whether [a] proposed [FLSA] settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

(internal quotation marks omitted). The settlement here satisfies these criteria.

4

First, plaintiffs' net settlement -- $46,666.67 after the deduction of attorneys' fees and costs -- represents more than 26% of their total alleged damages and 88% of their claimed unpaid wages. This percentage is reasonable, especially given plaintiffs' potential obstacles to recovery. See Gervacio v. ARJ Laundry Servs. Inc., 17 Civ. 9632 (AJN), 2019 WL 330631 at *1 (S.D.N.Y. Jan. 25, 2019) (Nathan, D.J.) (net settlement of 20% of FLSA plaintiff's maximum recovery is reasonable); Felix v. Breakroom Burgers & Tacos, 15 Civ. 3531 (PAE), 2016 WL 3791149 at *2 (S.D.N.Y. Mar. 8, 2016) (Engelmayer, D.J.) (net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable); Beckert v. Ronirubinov, 15 Civ. 1951 (PAE), 2015 WL 8773460 at *2 (S.D.N.Y. Dec. 14, 2015) (Engelmayer, D.J.) (net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable).

Second, the settlement will entirely avoid the expense and aggravation of litigation. The factual and legal issues in this matter would have led to protracted and costly litigation, likely involving multiple depositions and extensive document discovery. The settlement avoids this burden.

Third, the settlement will enable plaintiffs to avoid the risk of litigation. Defendants denied plaintiffs' allegations and presented facts and compelling legal arguments that could preclude any recovery by plaintiffs. Given these obstacles

5

and the fact that plaintiffs bear the burden of proof, it is uncertain whether, or how much, plaintiffs would recover at trial.

Fourth, because I presided over the settlement conference that immediately preceded plaintiffs' acceptance of the settlement, I know that the settlement is the product of arm's-length bargaining between experienced counsel.

Fifth, there are no factors here that suggest the existence of fraud. The material terms of the settlement were reached at the settlement conference.

The allocation of the net settlement between plaintiffs is also fair. According to the Agreement, each plaintiff will receive approximately 27% of his total amount claimed (Damages Chart annexed to Settlement Agreement, D.I. 81-2). I find that allocation is rational.

The Settlement Agreement contains mutual general releases (Settlement Agreement ¶ 2). Generally, "courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" Martinez v. Gulluoglu LLC, 15 Civ. 2727 (PAE), 2016 WL 206474 at *2 (S.D.N.Y. Jan. 15, 2016) (Engelmayer, D.J.), quoting Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d

6

170, 181 (S.D.N.Y. 2015) (Kaplan, D.J.); accord Barbecho v. M.A. Angeliades, Inc., 11 Civ. 1717 (HBP), 2017 WL 1194680 at *2 (S.D.N.Y. Mar. 30, 2017) (Pitman, M.J.); Hyun v. Ippudo USA Holdings, 14 Civ. 8706 (AJN), 2016 WL 1222347 at *3-*4 (S.D.N.Y. Mar. 24, 2016) (Nathan, D.J.); Leon-Martinez v. Central Café & Deli, 15 Civ. 7942 (HBP), 2016 WL 7839187 at *1 (S.D.N.Y. Dec. 19, 2016) (Pitman, M.J.).

However, general releases may be permitted where the plaintiffs are no longer employed by defendants, the releases were negotiated by competent counsel for both sides and the releases are mutual. See Snead v. Interim HealthCare of Rochester, Inc., 16-CV-06550 (EAW), 2018 WL 1069201 at *6 (W.D.N.Y. Feb. 26, 2018); Geskina v. Admore Air Conditioning Corp., 16 Civ. 3096 (HBP), 2017 WL 1743842 at *2 (S.D.N.Y. May 3, 2017) (Pitman, M.J.); Cionca v. Interactive Realty, LLC, 15 Civ. 5123 (BCM), 2016 WL 3440554 at *3-*4 (S.D.N.Y. June 10, 2016) (Moses, M.J.); Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, 13 Civ. 5008 (RJS), 2016 WL 922223 at *2 (S.D.N.Y. Feb. 3, 2016) (Sullivan, D.J.); Souza v. 65 St. Marks Bistro, 15 Civ. 327 (JLC), 2015 WL 7271747 at *5 (S.D.N.Y. Nov. 6, 2015) (Cott, M.J.). General mutual releases in cases "with former employees who have no ongoing relationship with the employer, make[] sense in order to bring complete closure" in FLSA settlements. Souza v. 65 St.

7

Marks Bistro, supra, 2015 WL 7271747 at *5.  Here, plaintiffs are no longer employed by defendants, the releases were negotiated by competent counsel for both sides and the releases are mutual. Therefore, I approve the release provisions of the Settlement Agreement.

The Settlement Agreement also contains a provision that would prohibit plaintiffs from seeking re-employment with defendants (Settlement Agreement ¶ 4).  This provision is unacceptable.  It is well settled that clauses barring re-employment conflict with the FLSA's "primary remedial purpose:  to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 207 (2d Cir. 2015); see also Ortiz v. My Belly's Playlist LLC, 283 F. Supp. 3d 125, 126 (S.D.N.Y. 2017)  (striking down a similar provision barring plaintiffs from ever working, or applying to work, for defendants because it was in direct conflict with FLSA's remedial purpose); Olano v. Designs by RJR, Ltd., 17 Civ. 5703 (WHP), 2017 WL 4460771 at *3 (S.D.N.Y. Oct. 6, 2017) (Pauley, D.J.) (describing a re-employment prohibition as being one of the "'greatest hits'" of the provisions that are unacceptable under Cheeks); Baikin v. Leader Sheet Metal, Inc., 16 Civ. 8194 (ER), 2017 WL 1025991 at *1 (S.D.N.Y. Mar. 13, 2017) (Ramos, D.J.) (same).

8

The Settlement Agreement contains a severability provision (Settlement Agreement ¶ 13). Accordingly, the no-future-employment provision is stricken.

Finally, the Settlement Agreement provides that $23,333.33 will be paid to plaintiff's counsel for attorneys' fees and costs (Settlement Agreement ¶¶ 1.b.vi., 1.d.vi.). I find plaintiff's counsel's request for $23,333.33 -- one-third of the total settlement -- to be reasonable and appropriate. See Santos v. EL Tepeyac Butcher Shop Inc., 15 Civ. 814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, D.J.) ("[C]ourts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances."), citing Zhang v. Lin Kumo Japanese Rest. Inc., 13 Civ. 6667 (PAE), 2015 WL 5122530 at *4 (S.D.N.Y. Aug. 31, 2015) (Engelmayer, D.J.) and Thornhill v. CVS Pharm., Inc., 13 Civ. 507 (JMF), 2014 WL 1100135 at *3 (S.D.N.Y. Mar. 20, 2014) (Furman, D.J.); Rangel v. 639 Grand St. Meat & Produce Corp., 13 CV 3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit"). Thus, plaintiffs' counsel is awarded $23,333.33 for attorneys' fees and costs.

Accordingly, for all the foregoing reasons, I approve the settlement in this matter, except for paragraph 4, which is stricken from the Settlement Agreement. In light of the settlement, the action is dismissed with prejudice and without costs. The Clerk is respectfully requested to mark this matter closed.

Dated:   New York, New York
         March 27, 2019

                              SO ORDERED

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

All Counsel